We'll hear argument first this morning in Case 1010, Turner v. Rogers. Mr. Waxman. Mr. Chief Justice, and may it please the Court, due process requires the assistance of counsel before an alleged civil contemnor can be incarcerated. That categorical rule flows from the imposition by a court in a formal adversary proceeding of what this Court has termed, quote, the awesome prospect of incarceration. Scalia Of course, it's a formal adversary proceeding in a very limited sense, and not in the sense that caused us to require counsel to be provided in criminal proceedings where the other side is armed with legal knowledge that the poor in the proceedings do not involve counsel on the other side, do they? Well, Justice Scalia, the answer is yes and no. I don't think that you can call this non-adversarial because the — because South Carolina, as an adversary — To have counsel. Is it not true that many, perhaps most of these proceedings do not have counsel on the other side? It is the wife who is trying to get a payment of the default at alimony and does not have counsel to do it. I think it is — the contrary is true. According to the government statistics, 70 percent of noncustodial parents either have no income or have income less than $10,000, and therefore in a — in every State that accepts TANF funds, which is every State, they are represented by the State agency. And South Carolina, in this case, has made a rule that in State cases and that also includes non-welfare cases where the custodial parent has chosen to be represented by the State, the State entirely carries its prosecutorial burden by filing a rule-to-show clause and an affidavit showing the arrearages, and that places the burden, which South Carolina says is a heavy burden, on the defendant to prove inability to comply as a condition of maintaining his liberty. Well, if we agree with you, isn't this going to create an imbalance? Now, in this case, Ms. Rogers was not represented by counsel at this proceeding, was she? Ms. Rogers, in most of the proceedings — and it does vary from one to the other — in all — let's put it this way. In all of the proceedings, the charges and the State's prima facie case of willful contempt was established by a State employee. Yes, the State employee sends out the rule-to-show clause and proof that — evidence that the non-custodial parent is in arrears on the child payment. So let's see what would happen if counsel is then appointed in one of these cases where both the custodial parent and the non-custodial parent are indigent and perhaps not very well educated. The counsel is appointed for the non-custodial parent, and counsel comes in and says, this is the income of my client, and he's hurt. He was hurt on the job. All his income is Social Security disability benefits, and he doesn't have enough money to pay child support. Now, the custodial parent, who has no attorney, says, he's not really hurt. I see him walking around. He's going hunting. He's shooting baskets. He's driving around in a new car. It may not be — the title may not be in his name. He's out on the street corner. He's buying drugs. He's drinking alcohol. But I don't have a lawyer, and I can't prove any of this. So you've created a great imbalance there, haven't you? Not at all, Justice Alito. First of all, in all — in the majority of cases, the Department of Social Services is, in fact, the real party in interest and the moving party. And in any private case, for a nominal fee, the custodial mother can have the Department of Social Services act in that role, as Federal law requires the State to do. So why don't you argue for a rule that the State must provide counsel for the defendant in these cases where it has provided counsel or there is paid counsel on the other side? Wouldn't that be fair? That would certainly be more than fair. And the number of instances — let's be clear about this. The number of instances in which the State will be required to appoint counsel for the alleged civil contemnor will be in cases where — I mean, there's no reason why the State of South Carolina, when it issues the summons and the affidavit, says, fill out this form and let us know whether you have assets or have income. And in all of those cases where they believe that this is a turnip, not a deadbeat dad, they will proceed with remedies other than incarceration. It's only when they want to proceed in the face of a form that shows indigence and inability to have counsel that the State has to provide a lawyer before it deprive — before it puts this man in jail. When you asked — Mr. Blackman, in your opening statement, you said whenever, in a civil contempt, a person is subject to incarceration, he or she is entitled to counsel. In your opening statement, you didn't limit it to cases like the case we have before us, that is, where the defense is, I'm unable to pay, therefore, I can't get out of jail. Are you limiting — are you limiting your arguments to the case of a noncustodial parent or a former husband who says, I just haven't got the wherewithal to pay? Or are you making a broader claim that any time someone is subject to incarceration, they must have counsel? It is definitely the broader claim. That is, this decision about counsel has to be determined ex ante, because the State — and this is our limit, I suppose, our more limited request for a categorical rule. Where you have a State that has placed the burden on the noncustodial parent — Well, my question just follows from what I think Justice Ginsburg must have in mind. My understanding is that it's a commonplace if the witness declines to testify even though the witness has immunity or the attorney or the witness declines to produce a document, the judge says you will remain in jail until you comply. Now, in most of the States, I think he's allowed counsel. But just the broad statement that you — or the broad argument that you responded — that you're making when you answered Justice Ginsburg's case, apply there. So we are, in effect, saying in all these cases, you must have appointed counsel. No, no, no. Our submission is, any case in which the State proposes to deprive somebody with an unqualified right to liberty of that liberty by actual incarceration, there is a right to counsel. Now, there is a right to appoint a — You're committed to custody until you testify. Well — Mr. Bailiff, take him out. The cases have recognized the distinction, Justice Kennedy, between direct contempt and indirect contempt. And direct contempt, which is a witness in the courtroom refuses to testify, the cases have — both civil and criminal — have not required the appointment of counsel or a jury trial or anything like that. In a case where the grand jury witness refuses to testify, the cases also, to my knowledge, do require the appointment of counsel because there may be a defense and someone is being deprived of their liberty. Now, I think it's important, Justice Ginsburg, you asked me if I have a more limited rule. And in this instance, the limited rule is that certainly counsel requires — certainly the Due Process Clause requires the appointment of counsel where the State places the affirmative burden on the contemnor to demonstrate as a matter of law and fact that he was unable to comply, and thus that incarceration would not be unlawful punishment but lawful coercion. And that is, I think, an important distinction. Mr. Waxman, the Solicitor General suggests that the failure in this case of a failure to appoint counsel arises from a due process complaint that the — that the — that the petitioner here didn't know that he had indigency as a defense or what he needed to prove or to bring to court to prove that. Why wouldn't the Solicitor General's solution of saying as long as a State tells a defendant that they have a burden of proof and some contours of what proof they need to supply on that issue, that that would satisfy due process? What can a lawyer do when someone comes in and says, I'm not earning any money, I can't earn it, blah, blah, blah? The reason it doesn't satisfy, even if the defendant is advised that there is an inability to comply defense and that a sentence imposed where there is an inability to comply is unlawful under Gompers and Bagwell and, for that matter, under South Carolina law, is that the showing that the burden that the defendant has to shoulder, the showing that the defendant has to make, is both legal and factual, and neither one of them is straightforward. It's legal, for example, because there are lots of legal questions built into the unable to comply defense, including what it means to be unable to comply, intentional underemployment, the allegation made in this court that he's using up all his income on drug use, the ability to — He admitted that. Well, no, he admitted that — At least up until the accident. Yes. Yes, exactly. But the point is that use — intentional underemployment, drug use, the ability to incarcerate somebody so that they can reduce their arrearage on a work release program, perhaps the requirement that he sell his $1,500 car, those are all legal questions as to whether the defense — they constitute an inability to comply. And you don't think that an individual is capable of saying, I can't — yes, I am, or no, I'm not using up my money on drugs, that's my preference? I mean, the first — Or I have a $1,500 car, but I need it to be able to do something else? Justice Sotomayor, even leaving aside all of those undecided questions under South Carolina — legal questions under South Carolina law, even as to the facts that you've addressed, the burden is not insignificant. Recall that a mere assertion — I mean, in this case, this man filled out a form saying — certifying that he had no income and one asset, a car worth $1,500. In order — the courts have said that assertions don't satisfy — Where is that form in the record? Hmm? Where is the form in the record? The form is in the trial record. We did not include it in the — in the joint appendix. We can make it available to the court. It is in the trial record, and we didn't understand at the time we were filing that the United States would be making an argument that the submission of a, quote, simple form would satisfy due process. I thought of lodging it, but I think the court's lodging rules — Counsel. Counsel. Mr. Chief Justice. I'm sorry. You have stressed that the burden in this case is on the defendant. Would your position be different if the burden were on the complainant? I think the case would — our case would not be as strong. To be sure, in the criminal — in the criminal contempt context, the burden, of course, is on the State and to the reasonable doubt, but there is an acknowledged right to counsel, and there was for decades before this Court considered criminal contempt to be a crime within the meaning of the Sixth Amendment. So I think we would still — even if the burden had shifted, the broader rule we're asking for is, look, the — here the State is sending a man to jail repeatedly on the premise of exacting compliance with court orders, and on the theory that he holds the keys to his own pocket because he can always choose to comply. And our submission is that when the State uses that sanction on the basis of that theory, due process demands that it guarantee the assistance of counsel to assure that the district court is right and that the sentence imposed is lawfully coercive and not unconstitutionally punitive. That's our — Suppose the Court looks at this record and thinks, this is a broken system and a violation of due process. But requiring a counsel in every case may go too far, and there may, in fact, be alternate procedures that a State could adopt that would comply with due process. And I know that this is not your submission. It's instead the Solicitor General's submission, but if pressed on that point, what procedures do you think would be capable of giving a person in this situation a fair shake at this? Certainly — I mean, we think that given the way the adversary system works and given the legal nature of the determination that a judge makes depriving somebody of liberty and given the significant burdens that are faced in carrying the burden to establish that, there are no — due process requires the application of what this Court in Lassiter called the general rule or the presumption that civil or criminal, when the State chooses to absolutely deprive somebody fully at liberty of his liberty, it must provide counsel. I mean, I suppose the closest seconds would be what Justice Powell, providing the fifth vote in Vitek, provided, which is, even in that case where the decision was being made by a mental health professional and the issue involved the transfer from somebody in State prison to a State mental unit, a much-diminished liberty interest, even Justice Powell, providing the fifth vote, said, well, in light of the nature of the decision being made and the decision-making body, I wouldn't always require counsel. I would think that a trained mental health professional — Mr. Waxman, for those of us who think the Due Process Clause doesn't contain whatever we think it ought to contain, but contains what the people who ratified it thought it contained, what's the earliest case that you have which adopts the proposition that you're now espousing, that whenever a civil contempt citation is imposed upon an indigent person, that person is entitled to counsel as a matter of due process? Justice Scalia, if I had such a case, it would have appeared quite prominently in my brief. There is no such case, but let me make two points about history and what the Due Process Clause means, notwithstanding what some of us might like it to mean. First of all, history — the history is very, very complicated, and it doesn't dictate the answer. The traditional distinction along the lines was not between civil or criminal contempt, but direct or indirect contempt. And as I know Your Honor knows because you've written it, traditionally at common law, counsel was provided for civil cases and in misdemeanor cases, but not felony cases. The criminal-civil distinction in contempt arose in this Court around the turn of the 20th century. And it arose so that the courts could exercise more supervisory review over the imposition of criminal contempt by courts. Now, in Cook and Oliver, this Court, as I said, long, long before it recognized that criminal contempt was a sixth — a crime entitled to all Sixth Amendment protections, held that because of the nature of the deprivation of liberty, the appointment of counsel was required. And our submission here is, as this Court has recognized, the distinction between civil and criminal contempt is the question of whether you have coercive imprisonment or imprisonment as punishment. And in almost every case, the sentence involves some aspect of both. And where the only thing — the only thing that keeps the coercive imprisonment from being unconstitutionally punitive, absent a jury trial right and proof beyond a reasonable doubt and counsel, is the ability to comply with the Court's order. And that burden is put on the defendant, even though it is the State's burden to prove willfulness, due — But you're saying — Fundamental fairness as due process. Whenever there is an erroneous judgment in a civil contempt case, it becomes a criminal contempt case. Is that — is that what you're saying? This Court has said in Badwell and in Gompers that in the event that the sentence applied — in Badwell it was a fine, in Gompers it was — it was imprisonment — served only punitive purposes and could not be coercive because the defendant could not comply, that sentence was unlawful because it had not been imposed following a proceeding in which the government — I'm still curious. Are you finished? But just in case — I'm sorry, Justice Breyer, just to finish the sentence. That is the sine qua non of the distinction. And unlike, for example, the immigration context and the other contexts that the government is relying on, this is a situation in which the consequence of an error that is an erroneous outcome renders the detention an unlawful criminal penalty. That is not true in any court context. I'm saying that all the trappings of criminal procedure come with it. This case is focused on the right to counsel. But what about — I mean, the burden of proof. What about a jury trial? No, Justice Ginsburg. This Court has made — we're talking about a determination ex ante before the man is sent to jail, in this case, for repeated long periods, with — should he be appointed counsel. This Court has already said that in civil contempt proceedings, there is no requirement of proof beyond a reasonable doubt, and there is no requirement of a jury trial, just as following Galt, this Court said there is no requirement of a jury trial in a juvenile commitment case. My goodness, if you're relying for that proposition only on the fact that we've already said it, why don't you also say we've never said what you want us to say now? I mean, if that's the only argument, we've already said it. If it was wrong, we should unsay it. It wasn't wrong, Justice Scalia. And as we've pointed out, the majority of states and all seven circuits that have spoken to this question have all held that there is, in fact, a right to appointed counsel before the state in an assertedly civil contempt proceeding can deprive a human being of his liberty. But if all of the arguments you're making to us are correct, why shouldn't the other accompaniments of a full-dress criminal trial apply? So he has counsel, but the burden's been put on him rather than on the state to prove, in fact, that he — whether or not he is indigent. Because the proceeding is civil. It is not our contention that this is a criminal proceeding. And this Court in Mazzeo and in Hicks v. Fayok made clear that shifting the burden, so long as the — so long as the imprisonment is meant to be coercive, shifting the burden is not unconstitutional. Why is it — And because — I'm sorry. And because it is a civil proceeding — It's an illogical distinction, is what I'm saying. Well, I'm not sure — Maybe, Justice, if you don't ask his question — Yes, Justice. Why isn't something like what the Solicitor General suggested adequate here? The state provides a very clear form for the noncustodial parent to fill out, and then in court the judge goes through it step by step. Are you working? How much are you making? Do you have any other money? What expenses do you need for living? And then if you run into some of these complicated legal problems, or arguably complicated legal problems that you referred to, maybe in particular cases there would be need for the appointment of counsel. But why isn't that adequate to deal with this situation, rather than a categorical rule that you have to have counsel appointed in every case where there's an issue about ability to pay? That submission is inconsistent with how the adversary process works. And more importantly, Justice Alito, it misunderstands the nature of the burden. Unlike in Gagnon v. Scarpelli, where the mine run of cases only involved the parole revocation board to determine whether somebody had subsequently been convicted, here the mine run of cases involves things that an uncounseled, lay, often undereducated, often incarcerated defendant can't do. For example, this is the — Do you think the issue here is more complicated than the issue about whether somebody's probation should be revoked? Well, what Gagnon v. Scarpelli said was, in the mine run of cases, all that is inquired with respect to somebody who has a highly reduced liberty interest in an informal proceeding is whether or not they have subsequently been convicted, yes or no. And if it's any more than that binary factor, counsel probably is going to be required. And our submission is the mine run of these cases involve the marshaling of evidence and testimony that uncounseled, uneducated defendants are not likely to be able to do, and legal questions. You mentioned Lassiter and you mentioned something that Lassiter said in passing, but what was at stake there was deprivation of parental status. And the court said, sometimes, in some cases, yes, but we're not going to make the cross-the-board rule. Now, that deprivation, some people think, is the worst possible for a custodial parent, to be told you're no longer a parent, you no longer have a child. And yet, the court said, we're not going to provide counsel in every case, because in some cases, the person can get a fair hearing without counsel. Right. And what the court, and recognizing that Lassiter is dicta, because it did consider that context, what it said is, we have to do the Matthews v. Eldridge balancing against a generalization, a preeminent generalization that exists in our case law, which is that there is a presumption that an indigent defendant has a right to appointed counsel only when he loses or may be deprived of his liberty. Since that doesn't apply here, we have to do the Matthews v. Eldridge balancing against a presumption that cuts the other way. My concern is, and it's been brought up in some of the other questions that Justice Ginsburg asked earlier, I just have the sense that there are thousands of these hearings around the country, and they're very important in order to ensure child support. And that if we adopt your rule, in many cases where counsel are now waived or not present because of the noncompliant parent, it's going to ask for counsel, and that we're going to change the entire landscape of domestic relations proceedings, the Heisenberg principle. Justice Kennedy, the vast majority of jurisdictions require counsel and provide counsel, and there is no — we would think that if this were in every case or — I mean, doesn't the defendant have to — or the noncompliant parent have to ask for counsel? I believe the rule is that if you have a right to counsel, the court is required to advise you that if you — that you have one, and if you want to take it to court — My question is, do you — are there any data — are there any data to show that in most of these cases, counsel does, in fact, appear? My — I'm not aware — My assumption is not, but I just don't — I'm not aware of data one way or the other. We are only asking this Court to conform this Court's due process jurisprudence with the vast majority of State and lower Federal courts. Would that go for alimony and palimony, as well as child support? It would go to any instance in which an alleged civil contemnor is facing incarceration. So the instance, yes, it would cover. Yes, and can demonstrate an inability to afford counsel in the same way that happens in misdemeanor cases. May I reserve my balance of time? Thank you, Mr. Waxman. Ms. Kruger? Mr. Chief Justice, and may it please the Court, in civil contempt proceedings to enforce orders for child support, due process requires a meaningful opportunity to be heard on the simple and straightforward but critical question that characterizes remedial sanctions in this case, whether the nonpaying parent has the ability to pay. Ms. Kruger, you say that the procedures here were inadequate, but the counsel in every case is not necessarily required. You say alternate procedures can provide people in this situation with a fair shake. But then when you look at the procedures that you actually say would comply with due process, they are remarkably anemic. Basically, you say that a form has to be provided. You don't require that there be anybody attached to the court, the kind of person that Justice Powell might have been talking about in VTAC, some kind of caseworker to assist the person with whatever questions he might have about the form or about how to fill it out. You don't require that the court make any findings. You don't require that the court even ask any questions. Apparently, your idea of the procedure is just to give a person a form. Am I reading you right? No, I don't think you are, Justice Kagan. I think that we would say that there are three fundamental requirements for due process in this area. The first is both information regarding the nature of the inquiry that's going to be made at the hearing. I'm sorry. I'm not hearing you. Could you speak more loudly? Certainly. The first is, as Justice Sotomayor, you referenced earlier, the first is information in advance of the hearing that a critical question to be answered at the hearing is going to concern ability to pay and a form or other type of procedure that would elicit information that's relevant to the alleged consumer's financial condition. The second would be a hearing at which the alleged consumer has the opportunity to respond to any further inquiries that may be triggered by information that's already been provided. This is, I think, a common feature of many systems outside of South Carolina, which by the way, a court has concerns that information on a financial affidavit might be misleading or inaccurate. They have a duty to inquire further and to require supporting documentation as necessary to confirm or dispel concerns about the accuracy of the information. And then finally, I think we would require an express finding that the alleged consumer has the ability to satisfy the purge conditions such that the person can be said not only Counsel, as I — and then I think one of the deficiencies in addressing your argument is that I don't really know what the State's procedures are. Your co-counselor, Mr. Waxman, has said that there was actually a form. I don't know what that form looks like. The only thing that does seem missing that the State clearly provides is a requirement that the judge explain what the basis of his contempt finding is. I'm looking at 60A and 61A, and this judge left it completely blank. So is this a due process violation facially, or is this a due process violation as applied? Meaning it's just not clear to me whether the State's process in fact has all of the elements that you're speaking about or how I make that judgment, and whether the — we didn't grant cert on the question of whether as applied there was a failure or not. One of the difficulties in this case is that there was really very — no findings by the judge whatsoever. I think that's right, and I think it's also right that South Carolina, at least as so far as the record reveals, doesn't require a finding that the alleged contender has the ability to comply with a purge condition as opposed to requiring finding a willful violation of a court's order. The form, the order for contempt of court itself, 61A, does require the judge to fill out an answer as to whether he thinks the defendant is gainfully employed or has the ability to make the payment. So it was just absence here. The question on the form relates to a past condition as opposed to present ability to comply with a purge condition. So the two inquiries are distinct. Why isn't the requirement that the judge satisfy himself that there's a willful failure to comply with the order? Why doesn't that amount to saying the judge has to satisfy himself that this individual cannot pay or can pay? It's not willful if he can pay. If he can't pay. If he can't pay — You know what I mean. I do know what you mean. I understand you, Justice Scalia. I think there are two separate questions, both of which concern ability to pay, but one of which is retrospective and the other is prospective. The question whether the alleged contender has willfully violated a child support order is a retrospective question. During the alleged contender missed child support payments because he wasn't gainfully employed and didn't have the ability to comply. And then the question for purposes of determining an appropriate sanction is does this person have the present ability to comply such that sending that person to jail might reasonably be expected to induce them to carry out their obligations? Counsel, just to be clear, your answer to the question presented is no, right? It was not error for the South Carolina court to say there's no constitutional right in this type of a proceeding to appointed counsel. That's correct, Mr. Chief Justice. We think that there is no categorical right to appointed counsel in all civil contempt proceedings. Is there a state, we've been told that in many states appointment of counsel for an indigent noncustodial parent who has child custody abuse, that counsel is automatic. You have described something less than counsel. Is there any model, any state where there is such a procedure so one might find out how it's working? I don't think that there's any one place you can look in order to see what features states are employing. We know anecdotally from talking to individuals who are responsible for running programs in individual states that they do ordinarily, even in states that don't categorically require the appointment of counsel, satisfy each of the three procedural protections that I outlined earlier in response to Justice Kagan. So, for example, in New Mexico, which hasn't recognized a categorical right to appointed counsel, there is a solicitation of financial information in advance of the hearing. That information is reviewed by a caseworker who will make the decision whether or not to refer the case to civil contempt proceedings. There is a hearing at which further information is explored or elicited, and ultimately there's a determination made whether the alleged contender has the ability to comply. What about an aide who is not counsel? I mean, family court has a lot of auxiliary people, like child advocates, who are there to assist people who need some kind of representation, but not necessarily a lawyer. Is that any part of what you would propose? I think it would certainly be open to the court to consider whether or not having the assistance of a layperson who may not necessarily be a lawyer would be a requirement of due process. But I think given the nature of the inquiry, which goes to financial condition, it's the kind of information that individuals provide on a regular basis without the assistance of either a competent laypeople or lawyers with legal expertise. It seems unnecessary to satisfy the commands of fundamental fairness in order to create that requirement across the board. In much the same way, I think it's unnecessary to appoint counsel in every case, as opposed to taking the modest and relatively inexpensive steps that we've outlined in order to ensure a meaningful opportunity to be heard. Is the form you have in mind something different than the form, the IFP form that would be filled out, say, by a 2255 petitioner? I don't think it would, Justice Ginsburg, but precisely what the form would contain would have to be tailored to the law in the relevant jurisdiction. So where the determination is made on the basis of assets and income, it would be appropriate for the form to elicit that information. Where in other jurisdictions the law is clear that other information may be relevant to that inquiry, it would be appropriate for the form to elicit that information as well. But I think in substance, the form would look very much like the form that this Court sees on a regular basis, attached to its Petitions for Writs of Sorcery, and would also look very much like forms that are commonly employed in jurisdictions across the country in child support programs in order to establish the amounts of child support obligation in the first place. South Carolina employs such a form for that purpose, and I think it would be a relatively trivial matter for South Carolina to use a similar form for the purpose of enforcement. Ms. Kruger, could you say a bit more about the question that Mr. Waxman and Justice Scalia were talking about, how often these proceedings have the State on one side, how often they have the custodial parent on one side, you know, whether there is counsel for the opposite side in many of these cases? There is in some, but not all, Justice Kagan. It's true that the State is often, though not always, represented in these proceedings, not always by lawyers as opposed to caseworkers or other non-lawyer personnel who work for the Departments of Social Services. Thank you, Ms. Kruger. Mr. Bibas? Mr. Chief Justice, and may it please the Court, Mrs. Rogers and custodial mothers, parents like her, need simple, fast, civil procedures to probe fathers' chronic failures to support their children. Today, I'll make two points. First, this case is moot. Second, a per se right to appointed counsel is not essential to prevent fundamental unfairness. First, this case is moot. On remand, there is no possible redress for Petitioner. He seeks an advisory opinion, but fails to bear his burden of proving that his case will evade review because he could get a stay. Litigants must preserve questions by seeking stays or supersedious where available, only where there is no procedure of which Petitioner could have availed himself to stay confinement because a State statute had a blanket denial of bail pending appeal. Did this Court in Sibron find that his dispute could not be stayed and so would evade review? The South Carolina Supreme Court, as I understand, heard this case after he was released, so they didn't consider it moot. Your Honor, the issue was not briefed or argued or raised. My client had no lawyer, filed no brief, made no argument. So we don't know what they considered or held. They made no reference to it. But it wasn't a fact, was it not, that he was already released? Yes, that's correct, Your Honor. I suppose we have held, haven't we, that States can have different concepts of mootness than the Federal ones? Yes, Your Honor, that's right. And South Carolina deals with this issue. Obviously, in this Court, the issue is an Article III question. And because the evading review doctrine is an exception to Article III's normal requirement that Federal courts have jurisdiction only over live cases or controversies, it should be construed narrowly, only where essential to preserve a view. Here, Petitioner didn't ask for a stay. If he had asked, we would have. So do we have jurisdiction over any matter that isn't rendered in a final judgment in State court? No, Your Honor. So if we don't have jurisdiction over anything but a final judgment, how could we ever grant a stay if the State refused to? If the State refused to grant a stay, and why would the State here have granted a stay if it believes there's no Sixth Amendment right whatsoever to counsel, how could that litigant ever evade mootness? Your Honor is correct that the relief would be coming from the South Carolina State Courts. And South Carolina Rule 241c appears to be tailor-made for this situation. And it instructs courts to consider whether a stay is necessary to preserve jurisdiction of the appeal or to prevent the contested issue from becoming moot. Our position is — Can you point to any case involving support payments in which the South Carolina Court has ever granted a stay? The closest I can point to is Berry v. Januario. It's a South Carolina State court case involving parental termination — termination of parental rights from a family court where the South Carolina Supreme Court stayed the matter. And so if Petitioner had asked, there's a substantial likelihood the court would have granted a stay. Through the South Carolina Supreme Court at this point under Rule 23, this court could have granted a stay. Did Petitioner know about Rule 23? Where had he learned about that? He didn't have counsel, right? He had counsel as of no later than three weeks after the trial court hearing. He had counsel for 11 months of his sentence. Okay. Before — before it got up to the — That's right. Eleven months before the case became moot. On the merits, a civil contempt case does not, as my adversary suggests, quote, sound in criminal contempt and require counsel, quote, precisely to ensure that the proceeding remains civil. Is it correct for me to think of both the Petitioner's argument and your response as a Matthews v. Eldridge problem? No. Your Honor, I believe the main argument here, and the only one that Petitioner argued in the courts below, is an absolute categorical right that any loss of liberty equals an absolute right to counsel. Well, it does seem that absolute right and Matthews v. Eldridge are not quite a good fit, but it seems to me that most of Mr. Waxman's arguments can be subsumed within the Matthews v. Eldridge framework. Yes. That is his fallback argument, though it wasn't developed in the courts below. But I think it's important to note that because his argument approaches and, in fact, leads with an absolute claim, to note the breadth of the rule. So picking up on your question to Mr. Waxman, Justice Kennedy, it's important to note not only that Petitioner's rule would reach other civil contempts beyond child support, but because any loss of liberty is the overwhelming factor in his calculus, it would apply to tens of thousands of immigration and extradition cases each year. Petitioner's reply brief does not deny this, saying only they might or might well be distinguishable. And immigration, we would submit, is an a fortiori from this case. The legal issues there are more complex. The deprivation is more severe. The confinement not purgeable. Any woman — Justice Kennedy, if we were to focus just on the domestic relations support proceedings, would there be a basic change in the way those proceedings are being conducted in other states if we ruled in favor of Petitioner and said there's an absolute right? Yes, Justice Kennedy. There would be a massive change. Trial judges need to know ahead of time which sets of procedures to apply, civil or criminal. Isn't it true that most states in child support cases, when the defendant says I have no money, will appoint counsel? That is not true of most states, Justice Ginsburg. My understanding is 15 states recognize it as a constitutional matter. Eleven additional states by statute rule of practice appear to recognize a statewide right to counsel. So there's a bare majority. At least 17 states do not have a statewide right, and the remaining seven are unclear. So we're talking about reformulating rules in a huge number of states that probably affect hundreds of thousands of cases. I'd ask the Court to consider the Office of Child Support Enforcement study that's in the appendix to the senator's brief. It's the best empirical evidence we have of how these proceedings work. And the evidence is relevant both to the need for these procedures in the balancing test Justice Kennedy refers to, but also the apparent relatively low reason to believe there's a large error rate here. According to that study, many parents, non-supporting parents, are cited for contempt and purge their contempts. Many fewer are, in fact, confined. It appears to be the threat that coerces enforcement and deters violation. Many parents do not pay up until after the contempt hearing, and confinement is imminent. So states would have to appoint counsel in a large number of cases, most of which wind up purging. So the first point to note is that I thought the point was it's only if the defendant's claim is only if the defendant does not have the keys in his pocket because he has no money. So in cases where a typical recalcitrant spouse won't pay until he's threatened with jail, that wouldn't come in this category. I thought Mr. Waxman was speaking about people who do not have the keys in their pockets because they simply cannot. They do not have the wherewithal to pay. Yes, Your Honor, but very, very many non-supporting parents protest the same. And so it is true that the slice of those brought to civil contempt hearings is only a small fraction of the overall caseload. Yes, and I suppose you could say that in advance that the judge and the appointing authority simply wouldn't know. Exactly, Justice Kennedy. Trial judges need to be able to protect themselves. They need to be able to know when they go into a hearing whether to apply civil or criminal procedures. And that's this Court's lesson in Hicks v. Fyock. Hicks said a judge needs to know ex ante based on a couple of simple rules. Quote, if the relief imposed here is, in fact, a determinate sentence with a purge clause, then it is civil. Then civil procedures apply. And if the remedy runs to the injured party, then it is civil. But even cases that have overturned erroneous civil contempt do not, as my brother Mr. Waxman suggests, become punitive and criminal. Maggio and Shillitani recognize that they remain civil. Shillitani declined to find a right to indictment or jury trial because it was a civil case. To go back to your question. Counsel, I took the Solicitor General's position to be. Yes. They may accuse me of not being accurate in what I took their positions to be, which is the rule would be simple. You as State are free to run these procedures as you choose. But not to provide counsel, you have to meet some minimum Matthews versus Eldridge requirements. And so the rule is simple. The State can do what it wants, but it has to provide minimum due process. And they've previously set forth the three. All right? So really the answer is, no, you're not automatically entitled to a lawyer. If you're providing minimum due process. If you're not, then you have to provide a lawyer. Yes, Your Honor. All right? What's wrong with that rule? That I think is what the Solicitor General is suggesting. So first, what's wrong with the rule? And then second, in a case in which I did not see, haven't yet, a form that really talks about or tells the contemptor about his defense and what he needs to prove. Yes, he did get a hearing, but not a hearing that explored his statement that he'd been looking for work and couldn't find it. And a form, a judgment, that doesn't address his current ability to pay, how does the Carolina system comply with those minimums of due process? Yes, Your Honor. First, I'll talk about the Solicitor General's suggestions that you raised, and then talk about the specific procedures here. We think the Solicitor General's suggestions are interesting. They're worth exploring. They were raised for the very first time at the merit stage here. So there's been no development. We don't know what other States are doing. The range of options out there, the nonconstitutional measures, which in the criminal context for guilty pleas were developed through rulemaking, Rule 11, lots of testimony and inquiry. That's appropriate for development when presented and allowing those other bodies the first crack at them. Mr. Bevis, I have a question about the position of the government in this case. The government agrees with you that you don't need counsel, but says that we ought to The aspects of due process which the government asserts would make it unnecessary to provide counsel did not exist in this case. Do you think under our ordinary rules we can do that? No, Your Honor. That's beyond the question presented. The question presented was just whether counsel was necessary, right? That's correct. And I suppose it's fully within the power of the government to say why, you know, in this case the procedures are good enough, but then to come forward and say, moreover, those procedures were not applied in this case and therefore you should reverse. That's a new point, it seems to me, isn't it? Yes, Your Honor. And as Justice Sotomayor pointed out, that's not what this Court granted certiorari on. And this is a case for What about you stress that this falls on the civil side. So why shouldn't we take Rule 54d as our model and say that instructs the Court that if you give parties the relief to which they are entitled, even if they haven't asked for that relief, even if they've asked for something that they can't get? Justice Ginsburg, I don't believe this is a question about relief. I believe this is a question about what constitutional right is implicated. This case arises from a State court. The failure to raise the issue below is jurisdictional and is not the – that issue is not the jurisdiction. I don't know that that answers my question. The way I phrase the question is very specific. South Carolina, there's no constitutional right to counsel in every proceeding. But the question presented was whether South Carolina erred that an indigent defendant has no constitutional right to appoint the counsel in any civil contempt proceeding. And if the answer to that is if the civil contempt proceeding does not comply with minimum due process requirements, counsel is required. Your Honor, I respect that. Then isn't that an answer to the question presented? I don't read the question presented that way, Your Honor. But we can argue about that later. Okay. Well, I would think the rule would be that if South Carolina has not complied with minimum due process procedures, minimum due process procedures are required, not counsel is required. Yes, Justice Scalia. In a case presenting that issue, that's the appropriate remedy. So go back to the State court right now. Think of what the government says should happen. You should give them a form, and the form should say do you have money to pay or not. All right. So what did happen? Did the judge ever ask him? Here's what happened, Justice Breyer. The rule to show cause at Joint Appendix 50A said in all capital letters must bring proof of employment. This was Petitioner's sixth hearing. He was familiar with the issues before. At Petition Appendix 17A he did not. All right. So then why would you put him in jail? He has no job. All right. He explained that he, in fact, tried to explain why he didn't have the money, that he had been, both his drugs and two months of disability. The judge on the next page, Petition Appendix 18A, he heard the testimony. He saw his demeanor. He didn't believe him and found him in willful contempt. You mean he didn't believe him about what? That he had no money? That he did not have the money. Okay. So he thought he did have the money. That's our reading of Petition Appendix 18A. Well, we couldn't tell, could we, Mr. Bibas, because he completely ignored the question. The entire transcript is less than two pages long. Mr. Turner talked about how he had no money and he was disabled. The court completely ignored him. The court also ignored the questions on the form for the order of contempt about whether he had any money. The court ignored that as well. Your Honor, none of those, you're correct, none of those is filled out. But what I wanted to explain is that due process looks at the totality of the State procedures. And the State has three mechanisms in place by which Petitioner, having counsel, could have challenged this. He could have challenged both the factual and legal findings on appeal. Family courts have repeatedly overturned such judgments. I'm actually trying to find them. I don't understand all of this discussion. The question presented is not what due process procedures are required in these cases. That is not the question presented. It is simply whether counsel is necessary. Isn't that the only matter that we should be discussing? Yes, Your Honor. Fine, but I'd like to ask a different question. I'm trying to find out what happened here that was different from what the government suggests. The government suggests provide a piece of paper to ask certain questions. What I'd like to know is what's different in this proceeding from what the government suggests. That would have, perhaps on no one else, it could have an effect on the way I decide the case. Yes, Your Honor. There was no such form provided, and there was not a form. I understand there was no form. If he asked the questions orally, I might be tempted to say it doesn't matter. So I'm trying to say what really differed from what the government wants. Whether in a form or orally, a judge could ask such questions, as Justice Sotomayor pointed out, there is a form in the appendix. Whether what happened here or not is not the question. The record is insufficient because Petitioner didn't develop it. The government is not a party here, is it? No, Your Honor. It's just an amicus. So this expansion of the question presented from whether counsel is necessary to what are the due process procedures required is all at the suggestion of an amicus. Is that right? Yes, Your Honor. And so to focus on — Skip that one. What I'm trying to figure out — and I'm sorry I may be the only one trying to — I'm trying to figure out is what in general is the fairness of such situations in — where the woman is normally the one with the child, the man is normally the one who doesn't pay. Is it true, for example, that in most such situations across the country, the woman has a lawyer but the man doesn't? Is that true or isn't it true? There must be some organization that's studying that. Yes, Your Honor. That's — we don't have good nationwide statistics. What I can say is our understanding is that, first of all, Petitioner is incorrect in saying that the government has a lawyer here who is prosecuting. He is conflating the clerk of the court issuing a ministerial rule to show cause with the presence of a law-trained prosecutor. That is not the case in South Carolina. That is not the case in very many — Okay. So the answer to what I think of, in my own mind only, is very relevant, whether the woman has a lawyer but the man doesn't, is I don't know. It is not across the board. That is the answer. We don't have good information. We don't have good statistics as to how often. Okay. Counsel, do you know why we're not hearing from the State of South Carolina? Because the State was not a party to — The State decided not to become a party before the State Supreme Court. Is that right? Yes, Your Honor. Why aren't they defending their procedures? It may be an unfair question since you don't represent — I don't know. All I can say is Mrs. Rogers went — anticipating that she would receive child support, Mrs. Rogers went off welfare in 2003.  The State has written a couple of letters in the joint appendix saying that because we are not a party to the suit, our financial interest is not directly implicated. I think it would be a great financial interest if they have to provide counsel in these thousands and thousands of cases. That is a broader systemic interest, and the State did in fact join an amicus brief to that effect in this case. Could I ask a question about your mootness point? Yes. You say it's not capable of repetition and yet evading review, because should this happen again he could get a stay, as he could have gotten in this case. Do you have any case of ours which uses that reasoning and says the fact that in a future case you may be able to get a stay suffices to establish that this is not capable of repetition yet evading review? It's a new argument to me. Is there any case of ours that applies it? The closest is this Court's decision in St. Pierre. A number of lower courts that we cite have also followed. But it can't possibly be true, because we have cases applying the rule that this is capable of repetition yet evading review. If the rule were you have to get a stay, we wouldn't have any of those cases. No, Your Honor. In abortion cases, election cases, stays are practically impossible. This is a different category of case where stays are available. And those cases also seek prospective relief. If I might go back to the financial interest that you pointed out earlier, the reason the State would care here, it's not that there's a State FISC interest here that's substantial. But the reason that matters to my clients is because the huge fiscal burden here could deter many States from this enforcement. In fact, it has. In New Jersey, after the State Supreme Court recognized in Pasqua a right to appoint a counsel, New Jersey stopped using civil contempt enforcement. When a State has to appoint counsel and stops doing so, it removes deterrence in a massive number of cases. Do we have any computation about what it would be, what the counsel fee would be as opposed to keeping someone in prison for a year? We don't have those numbers, but I also believe that's not the correct inquiry, Your Honor, because it's not just the few people who are confined. As I was saying earlier, if the percentage of those going to these hearings who are actually confined is in the single-digit percentages, as some of the numbers in the State's appendix suggest, then you're getting a huge leveraging effect of many people being coerced into paying before going into confinement or immediately after going into confinement. So the State can permissibly weigh those costs and benefits. That's for the State legislature. To go back to Justice Breyer's question earlier about what due process might require, I think it's important to focus on that these procedures are straightforward, informal procedures navigable by layman. The most natural thing in the world when being accused of not paying is to say, but I can't pay, and to follow it up with an explanation. I applied for this job. I'm out of work. I got sick. But there are things about housing courts. I mean, housing courts are things fairly common. Somebody owes somebody $25 or whatever it is. The judge says pay it into court. And what happens if they don't pay it into court? We haven't looked at that, Your Honor. And I'm sure the same arises in administrative appeals and small claims court, any number of places. Here it's a simple intuitive issue, and South Carolina, like other States, uses relaxed, informal rules of evidence and procedure. There are effectively no rules of hearsay or authentication. There again — There are things the judge could have asked, though, and put on the record, and it might have cleared this up. He could have — the Petitioner here said he wasn't working and he couldn't work because he had been hurt. So the judge could have asked for medical records to substantiate that. And then the Petitioner admitted that until recently, apparently, he had been taking meth, he had been snorting Coke. The judge could have said, all right, you had the money then to buy those drugs. Now, where did you get that, and why do you no longer have that source of money? He could have gone through a few simple steps, couldn't he, to make this — to eliminate the problems? Yes, Your Honor. And whether that's salutary or ought to be considered in a future case, it's not the question here, but that could be worth exploring. It is a much lower cost than appointing counsel across the board. It's important to note that — It's a little difficult to write the opinion if you were to prevail. See, there's no absolute right. But there might be in some other case, depending. We don't give much help to the system that way because it might be that ultimately we would find that the balancing test is more complex than simply appointing the counsel. I don't believe this Court has to do that, Your Honor. In cases such as Gagnon and Lassiter, this Court laid out factors, said there's no categorical right to counsel, and the lower courts, our examination of the post-Gagnon cases suggests most of them have said, well, this is a pretty routine case, 85, 90 percent of the time. Well, then you do think we should lay out the factors? And if so, what are the factors? I don't believe that it's necessary because we can't conceive of a legal issue here so complex that categorically a lawyer is necessary. Counsel, I don't understand how we could say that if you do not meet minimum due process procedures, you must meet more than minimum due process procedures. I mean, once we say that it's enough if you do A, B, and C, but this State has not done A, B, and C, how can we say, therefore, you must appoint counsel? All we can say is you must do A, B, and C. I don't know of any instance where we impose more than the due process minimum because you have failed to comply with the minimum. Yes, Your Honor. Perhaps to go back to Justice Kennedy's point, if the Court were concerned about more specific guidance, it could point to at least in situations that involve relaxed informal rules of procedure where no rules of hearsay authentication, no jury trials, informal discovery, judges handle questioning, no State prosecutor, at least there, there might be no right to counsel. Well, I just don't know that all those things are properly before us. Well, then the appropriate thing is to answer the question that was raised by Petitioner in this case and not to go — no need to go beyond that, I would suggest. Finally, let me point out that the closest analog in the legal system to the question here about inability to pay child support is inability to afford counsel. Our criminal justice legal system has extensive experience with that under the CJA, the Criminal Justice Act. In the Federal system and most States, the burden is on the defendant to show his inability to pay counsel. But, Mr. Judge, practically when those forms are used, the person fills out a form and mostly they're just accepted, aren't they? Your Honor, I don't believe they're rubber-stamped. The statistics that I have seen show denial rates of 10 to 20 percent. In some counties, as high as 35 percent. So there is a meaningful inquiry and meaningful denials, and all of those cases would violate due process on Petitioner's logic. That cannot be the tidal wave to hit the criminal justice system. That is not an appropriate extension of due process, because the issues here and there are simpler, far simpler than in Lassiter, a formal trial-type adversarial procedure where, nevertheless, no categorical right to counsel was required. It's important to go back. If one looks at the roots of the right to counsel in Powell and Gideon and Zerbst, Powell talked about the need for the guiding hand of counsel who are skilled in the science of law in order to deal with technical defects in the charging instrument, to deal with incompetent, irrelevant, or inadmissible evidence. In proceedings such as this, where there are no formal rules of pleading or evidence, there is not a need, certainly not a need for a categorical right to counsel. If there are no further questions, may I conclude? Litigants can themselves argue the common-sense issue of ability to pay, just as they can address their ability to afford counsel without first having counsel. And the cost of appointing counsel across the board would deter States from enforcing custodial parents and their children's rights, as it has in New Jersey. Thus, this Court should dismiss for want of jurisdiction or else affirm. Thank you, counsel. Mr. Waxman, you have three minutes remaining. I have three points. Thank you, Mr. Chief Justice. First of all, I mean, this — the crux of this dispute comes down to whether this is akin to some sort of simple form that can be filled out that any lay person, no matter how uneducated, can deal with. Second, the question is, how much of a burden is this going to be on the States? And third, the question of whether or not what counsel suggests as the Utah model or what he denigrates as the New Jersey model would be a way to square the circle. First of all, counsel says he can't conceive of a legal issue that can arise in this case. Let's just look at this case as an example. There was allegations of an admission of drug use. Does or does that not constitute an inability to pay? That is a legal question. It is not a factual question. Inability to comply is a legal defense, not a factual excuse. The allegation was he's not employed, but maybe he's not looking for work, or he's underemployed. Is that inability to comply for purposes of a coercive contempt sanction? That is a legal question. Our suggestion is he could be incarcerated so that he could be placed on work release in a county jail program and reduce his arrearage. Is that or is that not a permissible application of a coercive sanction of incarceration? The cases that we've seen have said no, but it is an open legal question. Even as to the marshalling of evidence, it is his burden not to just say, oh, I can't pay. He submitted a form that he filed for his disability payments that said, I have no income and I have a car that's worth $1,500. Did he have to pay that car, sell the car to pay or not? That is a legal question. In terms of burden, the state is paying — there are approximately 15 percent of the state's jail population in any given year that are noncustodial parents that are serving terms, in this case two six-month terms and a year term, at the cost, according to the statistics, at the cost of between $13,000 and $17,000 a year. South Carolina, because it refuses to comply with the requirements of the federal program, has already paid $72 million to the government in fines and owes another 10. And if you want to really reduce the cost, Justice Kennedy, and make this manageable, take the system that they are applauding in Utah or denigrating in New Jersey. When the court sends out its order to show cause, it says, please fill out this form showing whether you have income, whether you have assets, and whether you are unable to hire counsel. Well, we don't have the Social Security disability form, but if the judge credited that and accepted that your client was unable to work and had only the assets listed on that form, would he not then automatically have shown that he had an inability to pay? I think the answer is yes, but we don't know whether the judge even looked at the form. And we know from South Carolina law that a mere assertion is not the marshalling of evidentiary support that's required to carry the burden. Thank you. Thank you, counsel. The case is submitted.